[1] Reported in 205 N.W. 277.
Judicial Ditch No. 7 in Watonwan and Blue Earth counties was established by the order of the district court in April, 1913. The two counties entered into a construction contract, under which work commenced in May, 1914, and continued intermittently until the contractors ceased work in 1909. Thereupon appellant, as surety on their bond, was called on to complete the work, employed one of the contractors for that purpose, and drew upon the retained percentage of the contract price to pay him.
The drainage was unsatisfactory and, in July, 1922, appellant was notified that the work had not been done properly and that bids would be received for the completion thereof. The lowest bid exceeded the amount of the benefits as determined by the viewers, and all bids wre rejected. In March, 1923, this action was brought on the bond to recover damages for breach of contract. Respondents recovered a verdict of $21,531.83, and this appeal is from an order denying a motion for a new trial. *Page 392 
1. Many assignments of error are based on rulings excluding evidence which appellant attempted to introduce in the examination of L.E. Lambert, the civil engineer in charge of construction from May, 1914, to October, 1918.
The original survey was the work of W.F. Brooks, an engineer appointed by the court when the drainage proceeding was commenced. His plans and specifications were made part of the contract and the contractors agreed to do the work in accordance therewith.
Respondents' principal witness was an engineer named Meyer, who was appointed by the court, after the work ceased, to inspect the work and report his findings. He made a comprehensive report of the defects he discovered and testified at great length concerning the particulars in which the work failed to conform to the plans and specifications. Lambert was called to rebut the conclusions which would necessarily be drawn from Meyer's testimony. While the work was in progress, Lambert had Brooks' field notes, plans, specifications and profiles, and they were before him when he testified. It appeared that he had laid out the work on the ground by taking levels and setting grade stakes; that much of the construction work was done under his direct supervision and the remainder under the supervision of inspectors he employed; that, as the work progressed, he inspected the tile as it was laid and, from time to time, issued certificates to the contractors or their subcontractors; that he had kept a record of his survey and had deposited the book in the office of the clerk of court, but at the time of the trial the book could not be found.
Lambert was repeatedly asked whether the tile was laid at the elevation shown by Brooks' profiles, whether the elevations shown by the grade stakes he (Lambert) set were the same as those shown by the profiles, and whether the pipe was laid at the depth marked on the grade stakes and prescribed by the original plans and profiles. To all such questions objection was interposed on the ground that they called for opinions of the witness, and that, until his note book was produced, there was no foundation for a conclusion *Page 393 
that the tile had or had not been laid at the depth or grade Brooks had specified. We cannot agree that these questions called for the conclusion of the witness. He had personal knowledge of the manner in which the tile was laid. The absence of the note book might affect the weight of the testimony, but not its admissibility. Kies v. Warrick, 149 Minn. 177, 182 N.W. 998. To deprive appellant of the benefit of Lambert's testimony on a vital issue in the case was prejudicial error.
Lambert knew whether the contractors had done their work in accordance with Brooks' plans and specifications. The work was done under his supervision. It was his duty to see that it was done in the manner prescribed by the contract, and the questions called for statements of fact. The modern tendency is all in the direction of liberality in the admission of evidence. Dun. Dig. § 3312. As an illustration, see Phillips v. Menomonie H.P.B. Co.109 Minn. 55, 122 N.W. 874, a case where the performance of a contract was in issue and it was held that the trial court, in its discretion, might allow a party to testify that he had performed the contract, if the answer amounted to no more than a mere shorthand rendering of the facts.
Certain questions of law, fully argued in the briefs, will come up again when the case is retried. It seems desirable that we should state our views as to some of these questions.
2. Appellant attempted to prove that the contractors dug the ditch to a depth and laid the tile at the level indicated by the grade stakes set by Lambert. The court ruled that such evidence was inadmissible, unless it was shown that the grade shown by Lambert's stakes was the same as the grade shown by Brooks' profiles and required by the contract. The ruling was correct. The provisions of the contract relative to directions given by the engineer did not relieve the contractors from their obligation to do the work in accordance with the plans and specifications.
Brooks was the engineer appointed by the court to make the survey and prepare the plans and specifications. These were the plans to which the court gave its approval. They were the bases *Page 394 
for the assessment of benefits. The contractors' bid was based upon them. The contract obligated the contractors to dig the ditch and lay the tile in accordance with their requirements. The engineer had no authority to modify them during the progress of the work without the consent of the court. G.S. 1913, §§ 5526, 5555.
Defendant takes the position that, if it could show that the tile was laid at the depth indicated by Lambert's grade stakes, it need not go further and show that this was the depth required by Brooks' specifications and profiles. The court is of a contrary opinion. Neither Brooks nor Lambert had any authority except such as was conferred on them by the statute. Lambert had certain duties to perform while supervising the work of the contractors. His duties were defined by the statute. In discharging them he represented the two counties. Seastrand v. D.A. Foley Co. 135 Minn. 5, 159 N.W. 1072. His authority was derived from the law. He had no authority to direct the contractors to do the work in any other manner than the law required. By statute, as well as by the express terms of the contract, the contractors were bound to do the work in the manner specified in Brooks' survey and report. When they notified the engineer that they had completed the job, it became his duty to inspect the work and, if he found that they had completed it according to the contract, plans and specifications, it was his duty to report that fact to the court and give the contractors a certificate to that effect. G.S. 1923, § 6694.
The limited authority of the engineer is shown by the last proviso of the section, which declares that none of the certificates issued by the engineer under the drainage law shall constitute prima facie or other evidence of the truth of the contents thereof, or of the fulfilment of the contract. In referring to this provision, it was said in State v. Clarke,112 Minn. 516, 128 N.W. 1008, that the engineer is not clothed with authority to relieve the contractor from a substantial performance of the contract, and Gilbertson v. County of Blue Earth, 145 Minn. 236, 176 N.W. 762, is to the same effect.
We hold that defendant could not escape liability by a mere showing that the ditch was dug and the tile laid at the depth and *Page 395 
on the grade indicated by the stakes set by Lambert and that, to defend successfully on the ground that the contractors had fulfilled their obligation, it was necessary to show that the work had been done as provided by the contract and by Brooks' plans and specifications.
The answer to the suggestion that such a ruling will place contractors at the mercy of incompetent or dishonest supervising engineers is that they may sue on the engineer's bond to recover their damages, and that the engineer is not the representative of the property owners who must pay for the work and who have a right to insist that it shall be done in substantial compliance with the original survey and report upon which their assessment was based.
We are not concerned with the rules applicable to building contracts in general. A drainage contractor is bound by the provisions of the drainage law. Drainage proceedings are special proceedings and we must look to the pertinent provisions of the statute and not to the common law to ascertain the rights and duties of contractors.
3. The contractors sublet a portion of the work. The engineer issued his certificate to the subcontractor pursuant to G.S. 1923, § 6694. In reliance thereon, the contractors paid the subcontractor. For the reasons already stated, we do not sustain the contention that these facts estop respondents from recovering the cost of remedying defects in the subcontractor's work.
4. An open ditch through Law Lake was changed to a tile drain. This was done pursuant to an order of the district court based on the written application of the engineer and with the consent of the contractors, but without notice to appellant. The change added 10 per cent to the cost of the work. It was authorized by virtue of that portion of G.S. 1923, § 6678, which provides for the modification of the plans and specifications during the progress of the work. The substance of the provision is found in the contract, but 2 instead of 10 per cent was written. At one time the statute limited the increase in cost to 2 per cent of the contract price, but, prior to the initiation of this proceeding, the statute had been amended and the limit fixed at 10 per cent. *Page 396 
In view of the rule that a contract made in the course of a proceeding under a statute is presumed to have been made with reference to the provisions of the statute and that such provisions are to be read into the contract, Bohn v. McCarthy,29 Minn. 23, 11 N.W. 127, and in view of grave doubt as to the power of the parties to the contract to deprive the engineer and the court of the right to exercise the authority expressly conferred by section 6678 for the evident purpose of securing an efficient system of drainage, the contract should be read in conjunction with the statute and is controlled thereby. This was conceded in the course of the argument, and the case should be tried as though the contract read 10 per cent instead of 2 per cent.
5. There are several reasons why appellant cannot escape liability on account of this change in the plan of construction. In the first place, the answer does not set up as a defense a release of liability by reason thereof. In the second place, the contract expressly provides that changes may be made. And in the third place, after notice of the contractors' default, appellant took charge of the work with knowledge of the change, undertook to complete it, and obtained respondents' consent to the release of the retained percentage of the contract price. This clearly amounted to a waiver of notice of the proposed change. MacLeod v. Nat. Surety Co. 133 Minn. 351, 158 N.W. 619.
The other questions discussed in the briefs require but one comment: The circumstances under which the culvert beneath the public highway was constructed, and its effect as an obstruction to the flow of water in the open ditch, should be brought out at the trial in order to give the court all the facts relative to the issue under the pleadings in respect to the culvert and the legal consequences of its construction and maintenance.
For the reasons stated above, the order appealed from is reversed and a new trial granted. *Page 397